Norman E. METZKER, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3363.

Court of Appeals of Alaska.

Aug. 31, 1990.

J. Michael Robbins, Asst. Public Defender, Palmer, and John B. Salemi, Public Defender, Anchorage, for appellant.

Eugene B. Cyrus, Asst. Dist. Atty., Steven H. Morrissett, Dist. Atty., Palmer, and

Douglas B. Bailey, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON,* JJ.

## OPINION

SINGLETON, Judge.

Norman E. Metzker pled no contest to driving while intoxicated (DWI), AS 28.35.-030, preserving the right to appeal the denial of his motion to suppress the fruits of an alleged improper stop.

During the early morning hours of October 6, 1988, Alaska State Trooper Gregory Olson responded to a dispatch concerning a disturbance at the Kashim Bar. Upon arriving at the scene, a witness informed him that a woman, later identified as Sharon Yates, had been assaulted and had left the premises to go to the Roadhouse Bar. As he spoke with Trooper Olson, the witness observed Yates exit the bar and pointed her out to Olson. Olson approached her and saw that she was extremely intoxicated, "incoherent" and "disoriented." Yates told Olson her boyfriend had hit her. When Olson attempted to ask her about the altercation, she ran away, flagged down a passing pick-up truck, and left the scene. At about the same time, an individual claiming to be Yate's boyfriend approached Olson. He admitted that he and his girlfriend had had a "fight." Olson wanted to learn exactly what had happened, so he radioed for other troopers to locate and stop the truck that the woman had flagged down because the passenger was a possible assault victim.

Trooper Brad Anderson spotted the truck shortly after Olson's dispatch. He saw the passenger momentarily disappear from sight. He did not know whether she had ducked down or had been pulled down. Anderson stopped the truck. He was unsure if Yates was the perpetrator or the victim of the assault, but he assumed that she was the victim. He was also uncertain whether the driver of the truck had been involved in the assault.

Upon stopping the truck, Anderson immediately contacted Yates, who said that she was uninjured and that the driver had not been involved in the assault, but had only offered to give her a ride. The officer approached the driver, Norman Metzker, to verify this information. Upon making contact, Anderson smelled a strong odor of alcohol on Metzker's breath. Metzker was unable to perform any field sobriety tests. Anderson arrested him for DWI.

■ An investigatory stop is justified only where there is reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred. *Coleman v. State*, 553 P.2d 40, 46 (Alaska 1976). In *State v. G.B.*, 769 P.2d 452, 455–56 (Alaska App.1989) (citations omitted), we stated:

*Coleman* addresses the problem of differentiating serious from nonserious harm by espousing a flexible approach based on practical necessity rather than a rigid standard of categorical exclusion. *Coleman* requires a determination of the issue based on the circumstances in each case. While the theoretical seriousness of the crime for which reasonable suspicion exists is a significant factor in each case, it is not in itself determinative.... [A] threat to public safety must be considered in conjunction with the imminence of that threat....

These factors must in turn be balanced against the strength of an officer's reasonable suspicion and the actual intrusiveness of the investigative stop.... A minimally intrusive stop based on solid information indicating that a crime is actually in progress or has just been completed may be justified under *Coleman* even when the crime itself is not a felony and involves harm that in other contexts might not seem particularly serious.

In each case, compliance with *Coleman*'s requirement of recently committed serious harm must be evaluated with a view toward the fundamental concern of the *Coleman* court: the risk that an investigative stop based on mere suspi-

* This case was submitted for decision prior to          Judge Singleton's resignation.

cion may be used as a pretext to conduct a search for evidence. As indicated in *Coleman,* the fundamental inquiry in each case is whether "a prompt investigation [was] required ... as a matter of practical necessity."

Metzker challenges the stop on two grounds. First, he claims that at the time of the stop there was no imminent danger of bodily harm because the altercation had already ended, the officer did not observe that Yates had any injuries, and Yates had left the scene. Second, he contends an investigatory stop is permitted only where the detainee is a criminal suspect, rather than a witness or victim.

■ Metzker's first claim is unfounded. A witness at the scene informed Olson that a woman had been the victim of an assault—a potentially serious offense. The offense had only recently occurred. Although the trooper did not observe any cuts or bruises on the victim, he did notice that she staggered as she walked, she appeared to be extremely disoriented, and, when questioned, she fled. Under these circumstances, Olson was justified in issuing the locate for the truck in order to inquire about the circumstances of the alleged assault and the extent of Yates' injuries, if any. Olson's dispatch of this information with a description of the truck to Anderson clearly gave the trooper sufficient reasonable suspicion to make the stop. It is noteworthy that Anderson observed the truck in close proximity to the crime scene shortly after Olson's dispatch. In addition, Anderson's stop was minimally intrusive. His sole purpose in stopping Yates and Metzker was to ascertain the details of the assault and to ensure that Yates was uninjured and out of danger. In our view, there is simply no evidence to support the possibility of a pretextual search for evidence. Under the totality of the circumstances, Anderson "had the right and the duty to make a prompt investigation which required [him] as a matter of practical necessity to stop" Metzker. *See Coleman,* 553 P.2d at 46 (quoting *Goss v. State,* 390 P.2d 220, 224 (Alaska 1964)).

■ We also reject Metzker's second contention that a victim or witness of a crime may not be the subject of an investigatory stop. Under appropriate circumstances, a police officer may approach and stop a person for the purpose of investigating a crime even though the officer has no reason to believe that the person stopped has committed the crime which is being investigated. 3 W. LaFave, *Search & Seizure* § 9.2(b), at 353–57 (1987). However, courts generally seem to be in agreement that the fourth amendment does not allow the police to stop potential witnesses to the same extent as suspects of a crime. It appears the police are justified in stopping witnesses only where exigent circumstances are present, such as where a crime has recently been reported. *See, e.g., Baxter v. State,* 274 Ark. 539, 626 S.W.2d 935, 937 (1982) (police entitled to stop car in vicinity of recently committed armed robbery to ask driver if he had seen anybody nearby); *State v. Shaffer,* 223 Kan. 244, 574 P.2d 205, 206–07 (1977) (police entitled to stop car of former gas station employee for questioning as a witness because another employee had recently been found murdered at the station); *Model Code of Pre-Arraignment Procedure* § 110.2(b) (1975)[1]; *cf. State v. Joao,* 56 Haw. 216, 533 P.2d 270, 272 (1975) (where police observed person who had been involved in traffic

---

1. Section 110–2. *Stopping of Persons*

(1) *Cases in Which Stop Is Authorized.* A law enforcement officer, lawfully present in any place, may, in the following circumstances, order a person to remain in the officer's presence near such place for such period as is reasonably necessary for the accomplishment of the purposes authorized in the Subsection, but in no case for more than twenty minutes:

....

(b) *Witnesses near scene of certain misdemeanors and felonies.*

(i) The officer has reasonable cause to believe that a misdemeanor or felony, involving danger of forcible injury to persons or of appropriation of danger to property, has just been committed near the place where he finds such person, and

(ii) the officer has reasonable cause to believe that such person has knowledge of material aid in the investigation of such crime, and

(iii) such action is reasonably necessary to obtain or verify the identification of such person, or to obtain an account of such crime.

accident nine days earlier and who could not be located for questioning, police entitled to stop person only to arrange for interview at a more reasonable hour and location).

██ *United States v. Ward,* 488 F.2d 162 (9th Cir.1973) cited by Metzker, is consistent with these authorities. In *Ward,* the court concluded that the stop was improper in large part because there were no exigent circumstances to warrant the stop: the criminal conduct being investigated had not recently occurred and the FBI agents were aware of the identity of the subject. *Id.* at 163. In Metzker's case, however, a potentially serious crime had just been reported and the victim, with knowledge of the incident and possibly in need of medical attention, had just left the scene. In our view, the exigency of the situation warranted an investigatory stop.

Accordingly, the conviction is AFFIRMED.