**CITY OF KODIAK, Kodiak Police Department, and William D. Marsh, Appellants,**

v.

**Martha SAMANIEGO, Appellee.**

No. S–10365.

Supreme Court of Alaska.

Jan. 23, 2004.

---

Frank S. Koziol, Law Office of Frank S. Koziol, Anchorage, for Appellants.

Jeffrey A. Friedman and Kenneth R. Friedman, Friedman, Rubin & White, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Martha Samaniego sued the City of Kodiak for false confinement and battery when Sergeant Marsh of the Kodiak Police Department grabbed her and prevented her from leaving the scene of an Immigration and Naturalization investigation. At trial, the jury found that Sergeant Marsh had falsely confined and battered Martha Samaniego. The City of Kodiak appeals (1) the superior court's denial of its summary judgment motion on the question whether exigent circumstances justifying Marsh's detention of Martha existed as a matter of law; (2) the court's refusal to give a jury instruction proposed by Kodiak; (3) the court's evidentiary rulings concerning expert testimony and a knife at the scene; and (4) the court's award of attorney's fees to Martha Samaniego. Because the superior court's legal decisions were correct and its evidentiary determinations fell well within its discretion, we affirm the superior court's rulings.

## II. FACTS AND PROCEEDINGS

### A. Factual History

In April 1994 Kodiak Police Sergeant William D. Marsh responded as back-up to a traffic stop conducted by Kodiak Police Officer Bohac and two Immigration and Naturalization Service (INS) agents. Bohac and the INS agents were investigating whether the people in the stopped car had documentation proving that they were in the United States legally. While the INS agents and Bohac questioned the individuals, Julia Samaniego drove up and stopped at the scene because she knew the people under investigation. She was driving with four of her children, including her daughter Martha, and a friend.

One of the INS officers approached Julia Samaniego's car and asked her where she was from. According to the INS officer, Julia Samaniego replied "Mexico." The INS officer asked Julia Samaniego for her immigration documents, and Samaniego replied that the documents were at her house. The INS officer then asked whether Julia Samaniego had any identification with her, to which Samaniego replied "no." At that point, Sergeant Marsh approached Julia Samaniego's car.

At this point, Sergeant Marsh and Julia Samaniego's accounts of what happened diverge. According to Julia Samaniego, Sergeant Marsh told her "get out of the car or I [will] do it for you" and proceeded to pull her by the arm out of the car. According to Sergeant Marsh, he asked Julia Samaniego to step out of her car and offered his arm to help her. Julia Samaniego left the car and had a conversation with Marsh. While they were talking, the INS agent spoke to Samaniego's children, who were still in the car. According to Martha Samaniego, who was fifteen years old at the time, the agent asked the children individually where they were from and whether they had identification. Martha testified that when the agent asked her where she was from, she first replied "Mexico," but she then told the agent that she was just kidding and that she was born in the United States. Martha then decided to go home to get her mother's immigration and identification papers. She left the car and started to walk away. Martha explained that when her mother saw her walking away, her mother told her to wait and asked her where she was going.

It is uncontested that after Martha explained where she was going, Marsh grabbed her. Julia Samaniego pulled Martha behind her and stood between Martha and Sergeant Marsh. Martha testified that Julia told Marsh not to touch Martha. According to Martha, Marsh then attempted to arrest Julia and started to walk her to the back of the Samaniegos' car. Martha watched this as she was being held with her hand behind her back by an INS agent. Martha testified that during this confrontation, her mother's shirt had lifted up, and Martha wanted to reach

out and pull it back down. Martha explained that she slipped out of the jacket she was wearing, left the INS officer holding the jacket, and took a step forward toward her mom to pull the shirt down. According to Martha, another officer stopped her and then the INS agent regained control over her, holding her until the incident was over.

Also relevant to this appeal are facts concerning a knife at the scene of the incident. On April 9, 1994, before the confrontation with the police occurred, the Samaniego family went to a rodeo. At the rodeo, Martha Samaniego found a knife, which she gave to her mother who put it into her pocket. Besides keeping the knife away from her kids, Julia Samaniego testified at her deposition that she did not know what she planned to do with the knife. The knife was never used during the confrontation nor was it discovered by the police until after Julia was arrested.

## B. Procedural History

Martha Samaniego sued the City of Kodiak, the Kodiak Police Department, and Kodiak Police Sergeant William D. Marsh for assault and battery, false arrest, and false imprisonment. The parties stipulated that Martha Samaniego's case against the City of Kodiak be consolidated with her mother Julia Samaniego's case as both cases involved common issues of law and fact.[1]

Martha and Julia Samaniego filed a pretrial motion in limine to exclude any evidence "concerning or referring to the pocketknife possessed by Julia Samaniego at the time of her arrest." Kodiak opposed the motion, arguing that introduction of evidence of the knife was integral to its case. Over Kodiak's objection, Superior Court Judge Sharon L. Gleason granted the motion to bar any reference to Julia Samaniego's possession of the knife. The superior court also noted that if Kodiak believed that the evidence became admissible during trial, it could raise the issue with the court outside of the jury's presence.

Kodiak moved for summary judgment against Martha Samaniego arguing that it was entitled to prevail on the question whether exigent circumstances existed as a matter of law. The superior court denied this motion.

The Samaniegos moved to exclude the testimony of Michael A. Brave, one of Kodiak's expert witnesses. Brave is an expert on the use of force. The court granted the motion to exclude Brave's testimony, finding that his expert opinion contained credibility determinations regarding the witnesses in the case and would usurp the court's role in instructing the jury on the applicable law of "reasonable force." For these reasons, the superior court concluded that Brave's opinion would not assist the jury as required by Alaska Rule of Evidence 702.

Martha Samaniego presented four issues to the jury: (1) whether Marsh, without legal justification, falsely confined Martha Samaniego at the scene; (2) whether Marsh, without legal justification, falsely confined Martha Samaniego when he brought her to the police station and kept her there; (3) whether Marsh, without legal justification, committed a battery on Martha Samaniego when he kept her from leaving the scene; and (4) whether Marsh, without legal justification, committed a battery on Martha Samaniego when he handcuffed her.

The jury found for Martha Samaniego on two of her claims. The jury determined that Marsh falsely confined Martha at the scene, but not when he brought her to the police station and kept her there. The jury found that the confinement at the scene was not a legal cause of injury to Martha and thus awarded her $1 in nominal damages. Finding that Marsh committed a battery on Martha when he kept her from leaving the scene, but not when he handcuffed her, the jury awarded Martha $35,000 for pain, suffering, and emotional distress resulting from the battery. The jury rejected Martha's claim for punitive damages against Marsh. The superior court entered final judgment for Martha for $35,001 in damages, plus $12,887.67 prejudgment interest, $7,288.87 attorney's fees, and

---

1. The appeals in Martha and Julia's cases were brought separately and Julia Samaniego's appeal

was decided in *Samaniego v. City of Kodiak,* 80 P.3d 216 (Alaska 2003).

$1,725.80 costs, for a total judgment of $56,903.34.

Kodiak appeals the superior court's denial of its summary judgment motion, the court's refusal to give the jury a certain proposed instruction, its exclusion of evidence regarding the knife and Brave's expert testimony, and its award of Alaska Civil Rule 82 attorney's fees to Martha Samaniego.

## III. STANDARD OF REVIEW

 We review a superior court's denial of a motion for summary judgment under the independent judgment standard.[2] Under that standard, we determine whether any genuine issue of material fact exists and whether the movant is entitled to judgment on the law.[3] We view the facts in the light most favorable to the non-movant.[4]

 In reviewing the superior court's rulings on jury instructions, we apply our independent judgment to determine whether the challenged or refused instruction states the law correctly.[5] We then evaluate whether any error was prejudicial by putting ourselves " 'in the position of the jurors and determining whether the error probably affected their judgment.' "[6] The appellant bears the burden of proving prejudicial error.[7]

 We review the superior court's evidentiary decisions under the abuse of discretion standard.[8] We will find that the superior court abused its discretion only when we are left "with a definite and firm conviction, after reviewing the record as a whole, that the trial court erred in its ruling."[9]

 We will overturn a superior court's award of attorney's fees "only upon a show-

ing of abuse of discretion or a showing that the award is manifestly unreasonable."[10]

## IV. DISCUSSION

### A. The Trial Court Properly Applied the Exigent Circumstances Test To Determine Whether the Detention of a Witness Is Permissible.

The issue of what test to apply to the detention of a witness arose in two contexts during the trial proceedings. First, Kodiak argued in its motion for summary judgment that exigent circumstances existed as a matter of law. Therefore, Kodiak argued, Marsh was authorized to use reasonable force to stop Martha Samaniego, a potential witness, from leaving the scene. In support of its position, Kodiak argues for the first time on appeal that no exigency should be required for a police officer to use reasonable force to detain the driver and passengers of a vehicle for the duration of a traffic violation investigation or INS investigation. Second, Kodiak appeals the superior court's refusal to give Kodiak's proposed jury instruction, which permitted the jury to find that Marsh was legally justified in using reasonable force to stop Martha from leaving the scene because she was a material witness to the INS investigation of her mother.

#### 1. Exigent circumstances are required to justify the stop of a witness to a crime.

 The court of appeals addressed the question whether police may detain a witness at a crime scene in *Metzker v. State*[11] and

---

**2.** *Christensen v. NCH Corp.*, 956 P.2d 468, 474 (Alaska 1998).

**3.** *Id.; Geolar, Inc. v. Gilbert/Commonwealth Inc. of Michigan*, 874 P.2d 937, 941 n. 8 (Alaska 1994).

**4.** 956 P.2d at 474.

**5.** *General Motors Corp. v. Farnsworth*, 965 P.2d 1209, 1214 (Alaska 1998).

**6.** *Id.* (quoting *Vincent by Staton v. Fairbanks Mem'l Hosp.*, 862 P.2d 847, 851 (Alaska 1993)).

**7.** *Id.*

**8.** *Buster v. Gale*, 866 P.2d 837, 841 n. 9 (Alaska 1994) (citation omitted).

**9.** *Id.* (citation omitted).

**10.** *Feichtinger v. Conant*, 893 P.2d 1266, 1268 (Alaska 1995).

**11.** 797 P.2d 1219 (Alaska App.1990).

*Castle v. State.*[12] In *Metzker,* it noted that "courts generally seem to be in agreement that the fourth amendment does not allow the police to stop potential witnesses to the same extent as suspects of a crime."[13] The court of appeals concluded that "police are justified in stopping witnesses only where exigent circumstances are present, such as where a crime has recently been reported."[14]

*Metzker* involved a possible assault victim who ran away from the police, was intoxicated, and may have been in need of medical attention. After fleeing the police, the victim flagged down a passing truck and left the scene. Another officer responded to the request to locate and stop the truck. And shortly thereafter, the second officer spotted the truck, stopped it, and spoke with both the victim and the driver of the truck. The *Metzker* court determined that these facts—specifically the serious nature of the crime and a potentially injured victim—constituted exigent circumstances thereby justifying the stop of the truck driver as a witness to the crime.

The court of appeals revisited the question of when police may detain a witness at a crime scene in *Castle v. State.* In *Castle,* a Fairbanks police officer stopped a vehicle because one of its headlights was out.[15] The officer discovered that the driver's license was revoked. As the officer took the driver into custody, Castle, who was a passenger in the car, stepped out of the car and walked away. The officer chased and caught Castle, and searched him for drugs, finding plastic bags containing cocaine residue. When Castle challenged the legality of the stop, the state asserted that the officer was authorized to stop Castle because the officer knew that Castle was a witness to a crime: driving with a revoked license. The court of appeals in *Castle* reiterated its holding in *Metzker:* "the police are justified in stopping witnesses only where exigent circumstances are present."[16]

The court concluded that the officer's seizure of Castle could not be justified under the theory that Castle was a witness to a crime because of the lack of exigent circumstances.[17] The *Castle* court reasoned that the crime was over, that there was no ongoing or recently committed unsolved crime, that the officer had already taken the driver into custody, that the officer had no reason to believe that Castle possessed knowledge that would materially aid the investigation, and that the officer was not acting to ensure the health or safety of a crime victim as was the case in *Metzker.*[18]

Kodiak argues for the first time on appeal that we should overrule *Metzker* and *Castle* and find that no exigency is required for a police officer to detain the driver and all passengers in the vehicle or at the scene for the duration of a traffic stop. If the driver or passengers fail to comply with an order to remain, Kodiak advocates permitting an officer to use reasonable force to detain them at the scene.

In his treatise, *Search and Seizure,* LaFave endorses the limits that the ALI Model Code of Pre Arraignment Procedure places on the detention of witnesses. He contends that the Fourth Amendment does not allow potential witnesses to be stopped to the same extent as those suspected of crimes.[19] The Model Code also supports requiring exigent circumstances for the stop of a witness. It takes the position that an officer may detain a witness only when: a serious crime occurred recently; the officer reasonably believes that the witness's information will materially assist in the investigation; and the detention is necessary. The Code requires that

(i) [t]he officer [have] reasonable cause to believe that a misdemeanor or felony, involving danger or forcible injury to persons or of appropriation of or danger to

---

12. 999 P.2d 169 (Alaska App.2000).

13. 797 P.2d at 1221.

14. *Id.*

15. 999 P.2d at 170.

16. *Id.* at 173 (quotations and citation omitted).

17. *Id.* at 173–74.

18. *Id.*

19. 4 WAYNE LAFAVE, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 9.2(b) (3d ed.1996).

property, has just been committed near the place where he finds such person, and (ii) the officer [have] reasonable cause to believe that such person has knowledge of material aid in the investigation of such crime, and (iii) such action is reasonably necessary to obtain or verify the identification of such person, or to obtain an account of such crime.[20]

Many courts have adopted the exigent circumstances requirement.[21] The Ninth Circuit in *United States v. Ward* reasoned that no exigent circumstances existed to justify pulling a driver over for questioning as a witness when there was no crime "afoot" and no emergency situation nor any need for immediate action—such as a fear that the driver would leave town.[22] And in *Hawkins v. United States*, the District of Columbia Court of Appeals found the stop of a crime victim unreasonable when "there was no fast-moving scenario, no just-completed crime, and no flight." [23]

While the brief detention of a potential witness may be necessary under certain circumstances, we conclude, as did the court in *Metzker v. State*[24] and *Castle v. State*,[25] that exigent circumstances are required to justify the stop of a witness to a crime. Accordingly, the superior court did not err in applying the exigent circumstances standard to Kodiak's request for summary judgment.

### 2. The superior court did not err in denying Kodiak's motion for summary judgment.

■ Kodiak argues that the trial court erred in denying its motion for summary judgment against Martha. In its motion for summary judgment, Kodiak argued that Marsh was authorized to use reasonable force to stop Martha, a potential witness, from leaving the scene of an ongoing INS investigation of Julia Samaniego. Kodiak cited the court of appeals's decision in *Metzker v. State*[26] for the proposition that a police officer may use reasonable force to prevent a witness from leaving the scene of a crime, where exigent circumstances exist. According to Kodiak, because Marsh "reasonably believed the INS investigation was continuing when Martha tried to leave the scene . . . [a]n exigent circumstance" existed.

■ The superior court denied Kodiak's motion for summary judgment, reasoning: "Based on sworn testimony presented by [Martha Samaniego] with her opposition to the motion, a jury could conclude that a reasonable officer would not have felt it necessary or appropriate to use the force alleged to prevent Martha from leaving the scene." The superior court determined that Kodiak had not demonstrated, as a matter of law, that exigent circumstances existed to excuse Marsh's detention of Martha. We review the superior court's denial of a summary judgment motion de novo.[27]

■ In order to determine that the superior court erred in denying Kodiak's motion for summary judgment, we would need to conclude that there is no factual dispute and that exigent circumstances existed as a matter of law.[28] As both *Metzker* and *Castle* illustrate, the determination of whether exigent circumstances exist is fact specific. The *Metzker* and *Castle* courts each considered whether the crime involved was serious; whether it was reasonable to believe that questioning the witness would materially aid the investigation; and whether the health or

---

**20.** ALI MODEL CODE OF PRE-ARRAIGNMENT PROCEDURE § 110.0(1)(b) (1975).

**21.** *United States v. Ward*, 488 F.2d 162 (9th Cir. 1973); *Hawkins v. U.S.*, 663 A.2d 1221 (D.C. 1995); *State v. Ryland*, 241 Neb. 74, 486 N.W.2d 210 (1992) (concluding that stop violated the Fourth Amendment when it was for sole purpose of obtaining witness statement about previous accident because it was "not an emergency matter").

**22.** 488 F.2d at 162.

**23.** 663 A.2d at 1226–27.

**24.** 797 P.2d 1219 (Alaska App.1990).

**25.** 999 P.2d 169 (Alaska App.2000).

**26.** 797 P.2d at 1221.

**27.** *Christensen v. NCH Corp.*, 956 P.2d 468, 474 (Alaska 1998).

**28.** *Id.* at 474.

safety of a crime victim was at risk.[29] The superior court was correct in concluding that there were factual disputes as to the reasonableness of Marsh's belief that Martha had information regarding Julia's immigration status and that preventing Martha from leaving would aid the INS investigation. Thus, summary judgment was inappropriate because a factual dispute existed.

■ Additionally, the trial court was correct in its conclusion that Kodiak had not demonstrated, as a matter of law, that exigent circumstances existed to justify Martha's detention as a witness. Kodiak argues that this case is analogous to *Metzker*. According to Kodiak, Marsh was entitled to stop Martha Samaniego as a witness to a crime because a federal misdemeanor immigration offense had been admitted by Julia and was still being investigated; Martha was a material witness to such an offense; and questioning Martha could reveal useful information about the crime such as whether or not a green card existed and, if so, whether it was still valid.

But Kodiak's argument fails, as the facts of *Metzker* are distinguishable from those in the case before us. In *Metzker*, the court of appeals found the police officer's stop was justified by exigent circumstances. Specifically, "the police were justified in stopping [the vehicle] because a passenger in that vehicle was thought to be an assault victim who had just fled the police, who was intoxicated, and who was possibly in need of medical treatment."[30] Here, no such exigent circumstances were present.

Indeed, this case is more analogous to *Castle v. State*, where the court recognized that the officer "was not investigating an ongoing or recently committed unsolved crime."[31] Similarly, Julia Samaniego's crime was over—as soon as the INS agent approached her and asked whether she had her immigration documents or any form of identification, Samaniego admitted that she did

not. As in *Castle*, Officer Marsh "had no reason to believe that [Martha Samaniego] possessed knowledge that would materially aid" his investigation of Julia Samaniego's alleged offense.[32] Additionally, as in *Castle*, Officer Marsh was not acting to "ensure the health or safety of a crime victim, as was [the case] in *Metzker*."[33] Thus, Kodiak failed to demonstrate, as a matter of law, that exigent circumstances existed to justify Marsh's stop of Martha Samaniego. We conclude that the superior court did not err by denying Kodiak's motion for summary judgment.

### 3. The superior court did not err in refusing to give Kodiak's proposed jury instruction because the superior court correctly concluded that no exigency existed that would justify detaining Martha as a witness.

■ Kodiak challenges the court's refusal to instruct the jury "that Marsh was entitled to use reasonable force to stop a material witness from leaving the scene of a criminal investigation by the INS agents."

The proposed instruction provided:

William Marsh was legally justified to use reasonable force to stop Martha Samaniego from leaving the scene as a witness to the INS investigation into Julia Samaniego's immigration status if, based upon the preponderance of the evidence, William Marsh:

1. Reasonably believed the INS investigation into Julia Samaniego's immigration status was ongoing at the time he stopped Martha.

2. Exigent circumstances existed at the time William Marsh stopped Martha Samaniego.

First we must address whether Kodiak properly preserved the right to appeal the superior court's refusal to give the requested instruction. Alaska Rule of Civil Procedure 51 provides that a party may not assign as

29. *Castle*, 999 P.2d at 173–74; *Metzker*, 797 P.2d at 1222.

30. *Castle*, 999 P.2d at 173 (citing *Metzker*, 797 P.2d at 1221).

31. *Id.*

32. *Id.* at 173–74.

33. *Id.* at 174.

error the failure to give a particular instruction "unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection." [34]

Before closing arguments, jury instructions were discussed. When Judge Gleason told the parties that it was "time ... for objections to instructions," Kodiak's attorney raised the issue of its proposed instruction on reasonable force to stop a material witness, stating:

And then you have given us legal justification on the stopping of Martha at the scene, those are 15 and 16, and we had requested an instruction based on the theory of Martha being a material witness, leaving the scene, material witness to the immigration investigation, potential criminal investigation of Julia Samaniego, and I think the court decided not to give us that?

Judge Gleason responded: "Right. My reading of the *Metzker* and *Castle* cases would make that my view that that instruction is inappropriate." To that, Kodiak's attorney replied: "Right." Then the proceedings moved on without further discussion of the court's refusal to give Kodiak's proposed instruction.

Alaska Rule of Civil Procedure 51 provides that a party must object to the failure to give an instruction. [35] Where an attorney wishes to note an objection to the court's failure to give an instruction, he or she must state "distinctly the matter to which the party objects and the grounds of the objection." [36] Here, Kodiak's counsel's remark did not clearly lodge an objection. On the other hand, Kodiak did broach the issue of the trial court's failure to give its proposed instruction. While Kodiak may have intended to raise the issue to challenge the court's refusal to give the instruction, its response of "Right" to the trial court's denial

of the proposed instruction did not distinctly state an objection or the grounds as required by Rule 51. However, even if the objection was preserved, Kodiak's claim fails on the merits.

In reviewing a proposed instruction, we must consider whether the proposed instruction correctly stated the law. [37] The proposed jury instruction asserted that if exigent circumstances existed, Marsh was legally justified in using reasonable force to stop Martha Samaniego from leaving the scene of the INS investigation. The instruction states the holding of *Metzker* correctly and in that sense correctly states the law. However, Judge Gleason concluded that the exigent circumstances requirement of *Metzker* and *Castle* was not satisfied, rendering the proposed instruction inappropriate. A review of the record supports her view because the key facts about the event at the scene of the INS investigation are not disputed. It is uncontested, for example, that Marsh grabbed Martha Samaniego. The question then is whether Marsh's act of restraining Martha was justified.

The trial court was correct in its determination that no facts in the record suggested that "exigent circumstances" existed at the scene. Marsh was not privileged to detain Martha for Julia's investigation. As in *Castle*, Marsh "was not investigating an ongoing or recently committed unsolved crime." [38] Additionally, Marsh "had no reason to believe that [Martha Samaniego] possessed knowledge that would materially aid" his investigation of Julia's alleged offense. [39] Finally, Marsh was not acting to "ensure the health or safety of a crime victim, as was true in *Metzker*." [40] Thus, the superior court was correct in rejecting the instruction because as a matter of law no exigent circumstances existed.

---

**34.** Alaska R. Civ. P. 51(a).

**35.** *Id.*

**36.** *Id.; see also Jaso v. McCarthy,* 923 P.2d 795, 799–800 (Alaska 1996); *Brown v. Estate of Jonz,* 591 P.2d 532 (Alaska 1979); *Mitchell v. Knight,* 394 P.2d 892, 897 (Alaska 1964).

**37.** *General Motors Corp. v. Farnsworth,* 965 P.2d 1209, 1214 (Alaska 1998).

**38.** 999 P.2d at 173.

**39.** *Id.* at 173–74.

**40.** *Id.* at 174.

## B. The Superior Court Acted Within Its Discretion in Precluding Evidence of the Knife.

■ On April 9, 1994, before the confrontation with the police, the Samaniego family went to a rodeo. At the rodeo, Martha Samaniego found a knife, which she gave to her mother who put it into her pocket. Besides keeping the knife away from her kids, Julia Samaniego testified at her deposition that she did not know what she planned to do with the knife.

Before trial, Julia and Martha Samaniego moved to preclude at trial the presentation of evidence concerning the knife that Julia possessed at the time of her arrest. Kodiak opposed the Samaniegos' motion in limine, arguing generally that evidence of the knife was relevant to its case and specifically, with regard to Martha, that "Martha's attempted intervention into the fray can [ ] be explained as an attempt to interfere with the arrest and prevent the police from discovering the butterfly knife."

The superior court ordered Kodiak not to introduce evidence referring to or concerning Julia Samaniego's possession of a knife, but noted that if Kodiak believed during trial that the evidence had become admissible, it should raise the issue with the court outside the presence of the jury. The superior court found that while Julia Samaniego's possession of the knife might have some relevance, the prejudicial impact of the evidence outweighed its probative value.[41]

At trial, the subject of the admissibility of evidence regarding the knife resurfaced. After Julia Samaniego's direct testimony, the court discussed the issue of the knife with counsel. The court engaged in a Rule 403 balancing and reiterated its pretrial ruling that there would be no mention of the knife at trial. The court concluded that evidence of the knife might confuse the jury because the legality of the possession was uncertain.

The court reasoned that the issue of the knife was "unnecessary or outside the central focus of the issues in this case," and recognized that evidence of the knife could result in unfair prejudice: "[A] jury is more likely to make its decision on an emotional basis when a knife is flipped out in front of them and they're advised that Mrs. Samaniego had this knife on her [person] when, in point of fact, it was irrelevant in stage one [Marsh's detention of Martha at the car]."

On appeal, Kodiak argues that the superior court abused its discretion in barring evidence of the knife from trial because the evidence was relevant and important to its case. But the superior court acknowledged that evidence of the knife was relevant both in its pre-trial order and in its discussions of the knife during trial. As this court has recognized, "[r]elevant evidence is always subject to exclusion if, in the discretion of the trial court, its probative value is outweighed by the danger of prejudice or confusion, or by considerations of undue delay."[42] Our case law "recognizes that certain circumstances call for the exclusion of evidence which is of unquestioned relevance."[43] Thus, while the evidence of the knife may have been relevant to Kodiak's case, the superior court still had considerable latitude to exclude that relevant evidence under Alaska Rule of Evidence 403.

■ Alaska Rule of Evidence 403 provides that the superior court may exclude relevant evidence if the probative value of that evidence "is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[44] Consequently, we will only overturn a superior court's Rule 403 balancing determination if there has been an abuse of discretion.[45]

The superior court did not err in precluding evidence regarding the knife. The court

41. *See* Alaska R. Evid. 403.

42. *Shane v. Rhines*, 672 P.2d 895, 898 (Alaska 1983).

43. Alaska R. Evid. 403 advisory committee's note; *see also Yukon Equip. v. Gordon*, 660 P.2d 428, 436 (Alaska 1983); *Lerchenstein v. State*, 697 P.2d 312 (Alaska App.1985).

44. Alaska R. Evid. 403.

45. *Alaska Northern Dev., Inc. v. Alyeska Pipeline Serv. Co.*, 666 P.2d 33, 42 (Alaska 1983).

acted within its discretion in finding that evidence of the knife could lead the jury to make its decision on an emotional basis or could confuse the jury because of uncertainty as to whether possessing the knife was legal. Because the superior court did not abuse its discretion in excluding evidence of the knife, we affirm the superior court's decision.

### C. The Trial Court Did Not Err in Precluding Kodiak's "Use of Force" Expert Witness.

██ Before trial, Julia and Martha Samaniego moved to exclude at trial the testimony of Michael A. Brave, Kodiak's "use of force" expert witness. Brave prepared an eight-page preliminary expert witness report for Kodiak in 1996 in which he addressed the use of a stun gun on Julia. He included two short paragraphs that described Marsh's seizures of Martha as "objectively reasonable." Brave based this assertion on his belief that because Marsh and the INS agent had probable cause to believe that Julia Samaniego had violated the law, Marsh had reasonable suspicion to grab Martha as a witness to prevent her from leaving the scene.

The superior court granted the motion to exclude Brave's expert testimony, determining that Brave's opinion as to the reasonableness of force standard would not assist the jury and therefore did not satisfy the requirements of Alaska Rule of Evidence 702. The court reasoned that this testimony would not help the jury because it would "usurp[ ] the court's role of instructing the jury on the applicable law." The superior court also noted that Kodiak sought to have Brave apply the standard of reasonable force to the facts of the case. The court found this problematic because "[i]n so testifying, Mr. Brave may be making his own credibility determinations regarding the witnesses in the case."

On appeal, Kodiak argues that the superior court erred in excluding Brave's testimony because the testimony would have been helpful to the jury. Kodiak asserts that Brave

would have testified to the verbal and physical "options available to Marsh as he confronted the situation of Martha walking away from a criminal investigation scene." Kodiak maintains that Brave would have explained to the jury "why, through the use of force," it was important for Marsh to keep Martha Samaniego, a witness, at the investigation scene. Brave did not make these points in his report or in any subsequent offer of proof. Indeed the vast majority of Brave's testimony went to the appropriate use of a stun gun. Although Marsh used a stun gun on Julia Samaniego, there was no stun gun involved in the incident between Marsh and Martha.

Alaska Rule of Evidence 702 governs the admissibility of expert testimony at trial. The rule provides:

> If scientific, technical, or otherwise specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.[46]

In *Spenard Action Committee v. Lot 3*, we explained that Rule 702's helpfulness standard "requires that experts 'stop short of stating their own conclusions on [points that] the jury is at least equally capable of [determining].' " [47] Specifically, in *Spenard*, we held that the superior court abused its discretion in admitting police expert testimony that an establishment was operating as a house of prostitution.[48] We noted that courts generally "prefer to let a jury apply general standards supplied by experts to the specific facts of a case in order to reach its own conclusion," rather than have the expert testify to her own conclusion.[49]

The superior court acted within its discretion in determining that Brave's testimony would not assist the trier of fact. Brave's report contained solely conclusory opinions that Marsh's actions toward Martha "were at

---

46. Alaska R. Evid. 702(a).

47. 902 P.2d 766, 780–81 (Alaska 1995) (quoting 3 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 350, at 628 (1994)).

48. *Id.* at 781.

49. *Id.* at 781.

all time[s] objectively reasonable," and that Marsh's seizure of Martha was objectively reasonable under the totality of the circumstances. But Brave's legal conclusion that Marsh properly seized Martha as a material witness conflicts with the trial court's correct conclusion that exigent circumstances did not exist. The superior court did give an instruction providing legal justification for Marsh's action if the jury determined that Marsh reasonably believed that Martha was subject to an INS investigation. Brave's expert testimony would not have been helpful to the jury on this point because his opinion was based on Martha's status as a witness, not as a subject of investigation. Because the superior court did not abuse its discretion, we affirm its decision on this issue.

### D. The Superior Court Err Did Not Err in Declining To Adjust Martha Samaniego's Attorney's Fees Award.

After trial, Martha moved for prejudgment interest and attorney's fees. In response, Kodiak argued that Martha Samaniego was not the prevailing party and thus not entitled to attorney's fees. The superior court rejected Kodiak's argument and awarded Martha Samaniego $12,887.67 in prejudgment interest and $7,288.87 in attorney's fees.

■ On appeal, Kodiak argues that Martha Samaniego's attorney's fees award should be adjusted downward because Kodiak's award against Julia Samaniego was adjusted downward by ten percent.

■ As a threshold matter, Kodiak argues this for the first time on appeal. There is no evidence that Kodiak raised this argument below and Kodiak has thus waived the argument.[50] Moreover, we will overturn a superior court's award of attorney's fees "only upon a showing of abuse of discretion or a showing that the award is manifestly unreasonable."[51] Kodiak has not made such a showing. Martha Samaniego was the prevailing party in this case and there is no basis for adjusting Martha's award downward solely because the superior court saw fit to do so in Julia's case. We affirm the superior court's award of attorney's fees to Martha Samaniego.

## V. CONCLUSION

Because the trial court did not err in denying Kodiak's summary judgment motion, refusing to give a jury instruction proposed by Kodiak, excluding Brave's expert testimony and the evidence about the knife, and awarding attorney's fees to Martha Samaniego, we AFFIRM the superior court's determinations.

**50.** *See Willoya v. State,* 53 P.3d 1115, 1120 (Alaska 2002).

**51.** *Feichtinger v. Conant,* 893 P.2d 1266, 1268 (Alaska 1995).