[No. 25938-2-III.   Division Three.   June 26, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRISTOPHER TODD DOREY, *Appellant*.

*Susan M. Gasch* (of *Gasch Law Office*), for appellant.

*Andrew K. Miller, Prosecuting Attorney*, and *Alexander B. Johnson, Deputy*, for respondent.

¶1 Schultheis, C.J. — We are asked to decide a single issue: whether police may stop a potential witness when investigating a disturbance complaint when there exist no exigent circumstances. We hold that they may not and reverse.

## FACTS

¶2 At approximately 8:46 p.m. on June 29, 2006, Benton County Sheriff's Deputy Jason Bostic responded to a complaint by a named citizen of a disturbance involving a black man and another man in a black shirt. Deputy Bostic arrived at the intersection where the alleged disturbance was reported to have occurred 5 to 10 minutes earlier and found nothing. He then went to a convenience store that was in the direction in which one of the males had reportedly run. Upon entering the parking lot, Deputy Bostic saw a car in the stall of the car wash and a male in a black shirt, Christopher Dorey, squatting down with his back to the deputy. The deputy went into the store and spoke with the clerk, who knew nothing of the reported disturbance.

¶3 Deputy Bostic then pulled his patrol car up to Mr. Dorey, who was by then getting into his car to leave. The deputy yelled at Mr. Dorey "to hold on a minute and indicated that he wanted to talk to [Mr. Dorey]." Clerk's Papers (CP) at 74 (Finding of Fact 8). Mr. Dorey stopped his car and got out to speak with the deputy. Deputy Bostic asked Mr. Dorey if he had seen anything. Mr. Dorey said that he saw a group of people, one of whom matched the race of one of the persons described by the deputy, but that group had just left.

¶4 The deputy asked for Mr. Dorey's identification, which Mr. Dorey provided. The deputy recorded the information and thanked Mr. Dorey. The deputy ran the information for warrants as he watched Mr. Dorey leave.

¶5 When the inquiry turned up warrants, the deputy took off after Mr. Dorey. He found Mr. Dorey within minutes walking away from his car. The deputy saw Mr. Dorey

toss a fanny pack into the bushes. Mr. Dorey was arrested on the warrants and charged with possession of the methamphetamine that was in the recovered fanny pack.

¶6 Mr. Dorey challenged the legality of the stop. The trial court denied his motion to suppress, holding "this was a valid *Terry*[1] stop of a potential witness to the reported disturbance." CP at 75 (Conclusion of Law 1). The court further concluded that it was limited in time and purpose, and it was appropriate for the deputy to take Mr. Dorey's identification because Mr. Dorey had witnessed something associated with the disturbance. Mr. Dorey was found guilty as charged. This timely appeal follows.

## DISCUSSION

¶7 On a motion to suppress, we review factual findings for substantial evidence and conclusions of law de novo. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999), *overruled on other grounds by Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). "Substantial evidence" is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Whether particular facts constitute a seizure under the Fourth Amendment is a question of law that is reviewed de novo. *State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997).

¶8 The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV; *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). A warrantless seizure is presumed unreasonable under the Fourth Amendment. *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980). The presumption

---

[1] *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

of unreasonableness may be rebutted by a showing that one of the "few 'jealously and carefully drawn exceptions' to the warrant requirement" applies to the case under consideration. *Id.* at 149 (internal quotation marks omitted) (quoting *Arkansas v. Sanders*, 442 U.S. 753, 759, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979)). "The State bears the burden of showing a seizure without a warrant falls within one of these exceptions." *State v. Kinzy*, 141 Wn.2d 373, 384, 5 P.3d 668 (2000).

¶9 As an initial matter, the State suggests by citation to authority that there was no seizure in this case, rather merely a casual encounter with police in a public place. The State cites *State v. Mote*, 129 Wn. App. 276, 282, 120 P.3d 596 (2005). That case involved an officer speaking to the occupants of a stopped car. *See State v. O'Neill*, 148 Wn.2d 564, 579, 62 P.3d 489 (2003) (concluding that where a vehicle is parked in a public space, the distinction between a pedestrian and the occupant of a vehicle dissipates). Police officers are permitted to approach citizens and permissively inquire into whether they will answer questions as part of their "community caretaking" function. *State v. Nettles*, 70 Wn. App. 706, 712, 855 P.2d 699 (1993).

¶10 Here, Deputy Bostic stopped Mr. Dorey in a moving car. " '[T]he use of language or tone of voice indicating that compliance with the officer's request might be compelled' " is a seizure. *State v. Young*, 135 Wn.2d 498, 512, 957 P.2d 681 (1998) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554-55, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)); *see also State v. Gleason*, 70 Wn. App. 13, 17, 851 P.2d 731 (1993) (holding that a seizure occurred when one of two officers called out to the defendant, " '[C]an I talk to you a minute?' " as he walked away from the officers (alteration in original)); *State v. Ellwood*, 52 Wn. App. 70, 73, 757 P.2d 547 (1988) (holding that the defendant was seized when told by officer to " '[w]ait right here' " (alteration in original)). Yelling at Mr. Dorey "to hold on a minute and indicat[ing] that he wanted to talk to [Mr. Dorey]" and "flag[ging] him down" was a seizure. CP at 74 (Finding of

Fact 8); Report of Proceedings (Feb. 8, 2007) at 5. We hold that Mr. Dorey was seized.

¶11 An investigative *Terry* stop, based upon less evidence than is needed for probable cause to make an arrest, is among the specific exceptions to the warrant requirement. *State v. Glover*, 116 Wn.2d 509, 513, 806 P.2d 760 (1991) (citing *Terry*, 392 U.S. at 25-26). An investigative detention occurs under *Terry* when the police briefly seize an individual for questioning based on "specific and articulable," objective facts that give rise to a reasonable suspicion that the individual has been or is about to be involved in a crime. *Terry*, 392 U.S. at 21-22; *Armenta*, 134 Wn.2d at 10.

¶12 The State argues, as the trial court held, that the deputy properly stopped Mr. Dorey under *Terry* as a witness to a disturbance. Mr. Dorey argues that Washington law does not authorize the police to stop him as a witness and even if it did, there was no crime under investigation. We agree.

¶13 The State found no Washington authority addressing the detention of a witness. But after the briefing in this case was completed, Division Two of this court filed a case on this issue, holding, "There is no authority—either statutory or otherwise—permitting an officer to seize a witness without a warrant, absent exigent circumstances or officer safety." *State v. Carney*, 142 Wn. App. 197, 203, 174 P.3d 142 (2007), *petition for review filed*, No. 81124-5 (Wash. Jan. 23, 2008); *see id.* at 206-07 (Penoyar, J., concurring); *id.* at 210 (Quinn-Brintnall, J., dissenting).

¶14 In *Carney*, a sheriff's deputy reported to an area to investigate a reckless motorcyclist who was reported by a citizen to be driving at high speeds and doing "wheelies" in a residential neighborhood. *Id.* at 200. The deputy saw a motorcycle and rider that matched the description in the report talking to two occupants in a parked car. When the deputy approached, the driver ran to his bike and fled, swerving around the patrol car that the deputy attempted

to use to block the motorcycle, and ignoring the deputy's emergency lights and verbal instructions to stop.

¶15 The deputy then pulled up behind the parked car with his emergency lights still on. He asked the two women in the car to show him their hands and requested identifying information. He radioed in their names and birthdates to conduct a records check. Ms. Carney, the passenger, was found to have an outstanding warrant. In a search incident to the arrest, the deputy discovered methamphetamine in Ms. Carney's jacket, resulting in a drug possession charge. The trial court denied her suppression motion. On appeal, the majority in Division Two reversed.

¶16 As previously stated, the majority held that an officer may seize a witness in exigent circumstances. *Id.* at 203. The concurrence agreed that a witness may be held under exigent circumstances. *Id.* at 206 (Penoyar, J., concurring). From there, the majority split.

¶17 The author of the opinion found no exigency. *See id.* at 203-04. But the concurrence opined that there was an exigency that justified the stop under both the limited circumstances in Washington's common law for exigency and the circumstances referred to in *City of Kodiak v. Samaniego*, 83 P.3d 1077 (Alaska 2004) and the American Law Institute, *A Model Code of Pre-Arraignment Procedure* § 110.0(1)(b) (1975) (ALI Model Code). *Id.* at 206-07 (Penoyar, J., concurring).

¶18 In *Samaniego*, a driver sued the city for false confinement and battery when an officer grabbed her and prevented her from leaving the scene of an immigration and naturalization investigation of her mother. The city appealed the jury's verdict for the driver. The *Samaniego* court held that exigent circumstances were required to justify the stop of a witness. *Samaniego*, 83 P.3d at 1084. And that court found that no exigency existed to excuse the detention of the driver. *Id.* at 1084-85.

¶19 In deciding the parameters of the exigent circumstances necessary for detaining a witness, the *Samaniego*

court referred to the ALI Model Code, which proposes the detention of witnesses when "a serious crime occurred recently; the officer reasonably believes that the witness's information will materially assist in the investigation; and the detention is necessary." *Id.* at 1083 (citing 4 WAYNE R. LAFAVE, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 9.2(b) (3d ed. 1996)).

¶20 Thus, under the ALI Model Code, an officer should be allowed to make a stop when

> "(i) the officer [has] reasonable cause to believe that a misdemeanor or felony, involving danger or forcible injury to persons or of appropriation of or danger to property, has just been committed near the place where he finds such person, and (ii) the officer [has] reasonable cause to believe that such person has knowledge of material aid in the investigation of such crime, and (iii) such action is reasonably necessary to obtain or verify the identification of such person, or to obtain an account of such crime."

*Id.* at 1083-84 (alterations in original) (quoting ALI MODEL CODE, *supra*, § 110.0(1)(b)).

¶21 This position is shared by Professor LaFave. 4 WAYNE R. LAFAVE, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 9.2(b) at 289 (4th ed. 2004).

¶22 After reviewing this authority, the concurrence referenced the danger the motorcycle posed to persons and property, and the mobility of the witnesses and the risk of losing their possible evidence. *Carney*, 142 Wn. App. at 207 (Penoyar, J., concurring). But the concurrence opined that the scope of the stop was exceeded when the deputy detained the occupants of the car to make the records check. *Id.* (Penoyar, J., concurring) Here, there was no exigency.

¶23 The dissent agreed that a witness may be seized in the circumstances approved by the ALI Model Code, which, the dissent opined, applied in *Carney*. *Id.* at 210 (Quinn-Brintnall, J., dissenting). But here, the deputy had no reason to believe that a dangerous crime had been committed, that Mr. Dorey had knowledge to aid in such

an investigation, or that stopping Mr. Dorey was necessary to the investigation. *Samaniego*, 83 P.3d at 1083-84 (quoting ALI MODEL CODE, *supra*, § 110.0(1)(b)).

¶24 The State in this case relied on *Metzker v. State*, 797 P.2d 1219 (Alaska Ct. App. 1990), upon which *Samaniego* was, at least in part, based. But *Metzker* does not justify the stop in this case.

¶25 In *Metzker*, an Alaska appellate court noted that "courts generally seem to be in agreement that the fourth amendment does not allow the police to stop potential witnesses to the same extent as suspects of a crime." *Id.* at 1221. The court of appeals concluded that "police are justified in stopping witnesses *only where exigent circumstances are present*, such as where a crime has recently been reported." *Id.* (emphasis added). Not only were there no exigent circumstances here, there was no crime reported.

¶26 *Metzker* involved a possible assault victim who ran away from the police, was intoxicated, and may have been in need of medical attention. After fleeing the police, the victim flagged down a passing truck and left the scene. Another officer responded to the request to locate and stop the truck. Shortly thereafter, the second officer spotted the truck, stopped it, and spoke with both the victim and the driver of the truck. The *Metzker* court determined that these facts—particularly the serious nature of the crime and a potentially injured victim—constituted exigent circumstances thereby justifying the stop of the truck driver as a witness to the crime.

¶27 After *Metzker*, the Alaska appellate court decided *Castle v. State*, 999 P.2d 169 (Alaska Ct. App. 2000). There, a police officer stopped a driver whose vehicle had one of its headlights out. *Id.* at 170. The driver was taken into custody when the officer discovered the driver's license was revoked. Mr. Castle, a passenger, got out of the car and walked away. The officer chased and caught Mr. Castle, and searched him for drugs. The officer found plastic bags containing cocaine residue.

¶28 Mr. Castle challenged the stop. Relying on *Metzker*, the state attempted to defend it based on Mr. Castle's status as a witness to the crime of driving with a revoked license. But the Alaska appellate court noted that under *Metzker*, exigent circumstances were required to stop a witness. *Id.* at 173. And there were no exigent circumstances in *Castle*. *Id.* at 173-74. The court observed that the crime was over, there was no ongoing or recently committed unsolved crime, the officer had already taken the driver into custody, the officer had no reason to believe that Mr. Castle possessed knowledge that would materially aid the investigation, and the officer was not acting to ensure the health or safety of a crime victim, as was the case in *Metzker. Id.*

¶29 Significantly, Mr. Dorey points out that the nature of the disturbance for which the police were summoned was so innocuous that there is no crime to investigate. We agree. The facts the trial court found concerning the disturbance show that whatever took place was in the early evening before sundown. The evidence does not support the inference of a crime.

¶30 Further, no ongoing or recently committed unsolved crime was afoot, so there was no reason to believe that Mr. Dorey could assist in the investigation. Nor was there any indication that the deputy was acting to ensure the health or safety of a crime victim.

¶31 The *Samaniego* court also noted that many courts have adopted the exigent circumstances requirement. *Samaniego*, 83 P.3d at 1084 (citing *United States v. Ward*, 488 F.2d 162 (9th Cir. 1973) (no exigent circumstances existed to justify stopping a driver for questioning as a witness when there was no crime "afoot" and no emergency situation or any other need for immediate action); *Hawkins v. United States*, 663 A.2d 1221, 1226-27 (D.C. 1995) (stopping a crime victim was unreasonable when "there was no fast-moving scenario, no just-completed crime, and no flight"); *State v. Ryland*, 241 Neb. 74, 79, 486 N.W.2d 210 (1992) (stopping a driver violated the Fourth Amendment when it was for sole purpose of an officer's convenience in

obtaining witness statement concerning a previous accident and it was "not an emergency matter")).

¶32 The State also relies on *Baxter v. State*, 274 Ark. 539, 626 S.W.2d 935 (1982). But that case involves an Arkansas rule of law that permits officers to " 'request any person to furnish information or otherwise cooperate in the investigation or prevention of crime.' " *Id.* at 543 (quoting ARK. R. CRIM. P. 2.2). There being no correlative Washington rule, that case has no application here.

¶33 Most important, the stop in this case was not reasonable. If a police officer conducts a warrantless stop of a citizen, the Fourth Amendment requires that the stop be reasonable. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975). "The touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991) (citation omitted).

¶34 "The reasonableness of such a detention depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.' " *Armenta*, 134 Wn.2d at 10 (quoting *Brignoni-Ponce*, 422 U.S. at 878).

¶35 The State argues that the stop was reasonable, although it argues it in the context of scope. A valid stop must be limited as to length, movement of the suspect, and investigative techniques employed. *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983); *State v. Laskowski*, 88 Wn. App. 858, 950 P.2d 950 (1997).

¶36 In order for the recordation of Mr. Dorey's personal information to be reasonable under these circumstances, he would have had to provide such meaningful information as to make him a witness.

¶37 Mr. Dorey saw a black male in a parking lot that was in the direction of where a suspect in a disturbance was seen. There is nothing to show that Mr. Dorey also saw the

black male approach the parking lot from the direction of the disturbance. Under the State's analysis, every black male in the vicinity would be a suspect. Mr. Dorey stated only that he saw a black male in a car with others who were having car problems. The deputy did not ask for a description of the black male, his clothing, or of the type of car in which he was riding. The officer simply took down the scant and innocuous information Mr. Dorey offered. In light of the limited and very possibly unrelated information Mr. Dorey provided, together with the absence of a crime, for which an investigation would be futile, obtaining Mr. Dorey's identification was not reasonable.

¶38 Had Mr. Dorey not been stopped and his personal information not been recorded, his warrants would not have been discovered by the officer and the methamphetamine would not have been discovered. Because the initial stop was improper, all evidence seized as a result of that stop must be suppressed. *State v. Larson*, 93 Wn.2d 638, 645-46, 611 P.2d 771 (1980) (citing *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)). The court erred by denying the suppression motion.

¶39 Reversed.

SWEENEY and BROWN, JJ., concur.