174 P.3d 142 (2007)
STATE of Washington, Respondent,
v.
Roxanne Elaine CARNEY, Appellant.
No. 34147-6-II.
Court of Appeals of Washington, Division 2.
December 18, 2007.
*144 Michael C. Kinnie, Attorney at Law, Vancouver, WA, for Respondent.
Anne Mowry Cruser, Law Office of Anne Cruser, Vancouver, WA, for Appellant.

PUBLISHED OPINION
BRIDGEWATER, P.J.
¶ 1 Roxanne Elaine Carney appeals her conviction for possession of methamphetamine. We hold that an officer who seized Carney because she may have had information that would identify a reckless driver had no articulable suspicion that Carney had committed any criminal activity. Moreover, we note that the officer was not searching for weapons for his safety. Thus, the officer had no justification for checking for an outstanding warrant, the discovery of which led the officer to arrest and search Carney. The trial court should have suppressed the evidence. We reverse.
¶ 2 Deputy Kendall of the Clark County Sheriff's Department responded to an identified citizen's complaint that a man on a white and blue "crotch rocket type street bike [zipped] up and down 10th Ave in front of his house." CP at 18. According to the citizen, the motorcyclist was: driving recklessly at excessive speeds while cutting off other traffic; doing "wheelies" while riding the center line; and returning to an area of new homes under construction north of the citizen's house. CP at 18, 32. The citizen described the motorcyclist as a white male, wearing a dark helmet, white shirt, and blue jeans.
¶ 3 The deputy drove to a dead-end street ending in a cul-de-sac. At the west end of the street, he saw a black sedan legally parked facing the west end of the street. Two people occupied the car. A man matching the citizen's description of the motorcyclist (but not wearing a helmet) was standing near the driver's side of the car, talking to the car's occupants. The deputy noticed a white and blue motorcycle parked near the car. As the deputy approached the area, the man ran to the motorcycle, climbed on, and started the engine. The deputy turned on the emergency lights of his patrol car and yelled to the motorcyclist to stop the bike and get off. He also attempted to block the motorcycle, but the motorcyclist swerved around the patrol car, drove over the curb, and fled the area.
¶ 4 The deputy did not pursue the motorcyclist, but instead pulled up behind the parked car with his emergency lights still on. The deputy then detained the two women in the car, asked them to show him their hands, and requested identifying information. He radioed in their names and birthdates to conduct a records check.
¶ 5 As he waited for the record check results, the deputy questioned the two women about the motorcyclist. During his questioning, the dispatcher notified him that there was an outstanding warrant for the arrest of Carney.[1] The deputy arrested Carney, handcuffed her, and placed her in his patrol car. A search incident to arrest resulted in the discovery of two small bags of methamphetamine in Carney's windbreaker.
¶ 6 The trial court held a CrR 3.6 suppression hearing, but it ultimately denied Carney's motion to suppress the evidence. Thereafter, at a stipulated facts trial, the trial court found Carney guilty. Carney appeals.
¶ 7 We review the denial of a suppression motion to determine whether substantial evidence supports the trial court's findings of fact and whether those findings support the conclusions of law. State v. *145 Dempsey, 88 Wash.App. 918, 921, 947 P.2d 265 (1997); State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994). Whether a seizure occurred is a mixed question of law and fact. Although the trial court's factual findings are entitled to great deference, whether those facts constitute a seizure is a question of law that we review de novo. State v. Thorn, 129 Wash.2d 347, 351, 917 P.2d 108 (1996), overruled on other grounds by State v. O'Neill, 148 Wash.2d 564, 62 P.3d 489 (2003).
¶ 8 Initially, we hold that Carney, the passenger in the parked car, was seized. Whether a seizure occurred and whether that seizure was valid are separate inquiries. See O'Neill, 148 Wash.2d at 575-76, 62 P.3d 489. A seizure under article I, section 7 of the Washington State Constitution occurs when an individual's freedom of movement is restrained and when, considering all the circumstances, a reasonable person in the individual's position would not believe that he is free to leave or decline a request due to an officer's use or display of authority. O'Neill, 148 Wash.2d at 574, 62 P.3d 489. This determination is a purely objective one, looking at the actions of the law enforcement officer. O'Neill, 148 Wash.2d at 574, 62 P.3d 489. If the officer's conduct or show of authority, objectively viewed, rises to the level of a seizure, that seizure is valid only where there are "`specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant'" detaining the individual. O'Neill, 148 Wash.2d at 576, 62 P.3d 489 (quoting Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The officer must have a well-founded suspicion that the individual is engaged in criminal activity and must be able to "`point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" State v. Glover, 116 Wash.2d 509, 514, 806 P.2d 760 (1991) (quoting Terry, 392 U.S. at 21, 88 S.Ct. 1868). "The officer's reasonable suspicions are, therefore, relevant once a seizure occurs, and relate to the question whether the seizure is valid under article I, section 7." O'Neill, 148 Wash.2d at 576, 62 P.3d 489.
¶ 9 Here, the seizure was clearly an investigative detention. The deputy requested identification after he had seized Carney. "`A police officer's conduct in engaging a defendant in conversation in a public place and asking for identification does not, alone, raise the encounter to an investigative detention.'" O'Neill, 148 Wash.2d at 580, 62 P.3d 489 (quoting State v. Armenta, 134 Wash.2d 1, 11, 948 P.2d 1280 (1997)). In this case, though, the deputy's request that Carney provide identification followed a considerable display of authority. When the motorcyclist fled, the deputy did not follow him and did not turn off the patrol car's emergency lights. Instead, the deputy pulled up behind the sedan with the emergency lights still flashing and then approached the vehicle. He commanded the women to show their hands and demanded their identification. Under these circumstances, a reasonable person in Carney's position would not have felt free to ignore the deputy's request to identify herself after being seized.[2]
¶ 10 Based on the holding in O'Neill, the women here were in the same position as a law enforcement officer contacting a pedestrian. See O'Neill, 148 Wash.2d at 579, 62 P.3d 489 ("[W]here a vehicle is parked in a public place, the distinction between a pedestrian and the occupant of a vehicle dissipates."). But following the analysis in O'Neill and Terry, the deputy was not engaged in a social contact as would be permitted *146 if he merely asked for information, including Carney's name. See O'Neill, 148 Wash.2d at 580, 62 P.3d 489. Here, he did not suspect criminal activity on Carney's part and he was not searching for weapons for his safety. Yet he persisted to check Carney's identity and records, even though he had no justification either for a Terry stop or for running Carney's name for any arrest warrants.
¶ 11 The deputy detained the car's occupants, based on the deputy's belief that they knew or could have known the identity of the motorcyclist or had information about the alleged reckless driving. But this alone does not justify an unconstitutional intrusion into Carney's private affairs. There is no authority  either statutory or otherwise  permitting an officer to seize a witness without a warrant, absent exigent circumstances or officer safety, neither of which applies to this case. In fact, both statutory and common law precedent mandate the conclusion that an individual's alleged ability to provide the police with information material to the investigation of a potential crime does not justify a warrantless seizure, absent reasonable suspicion and based on objective facts, that the individual is involved in criminal conduct. See RCW 10.31.100[3]; O'Neill, 148 Wash.2d at 576, 62 P.3d 489. Finally, the only authority for detaining a witness is RCW 10.52.040 (courts shall hold a hearing to determine whether a material witness should be detained until the hearing or trial in which the witness is to testify) and CrR 4.10 (courts may issue a warrant for the arrest of a material witness only when certain requirements are met). Were it otherwise, the police would be free to detain any person suspected of having information about a crime without a warrant, thus considerably diminishing the protections of State v. Young, 135 Wash.2d 498, 957 P.2d 681 (1998), State v. Rankin, 151 Wash.2d 689, 92 P.3d 202 (2004), and O'Neill.
¶ 12 To better comprehend the seriousness of an opposite holding, one should consider the broad seizure powers that the police could use in the fairly common situation of a vehicle speeding in a downtown area. Under an opposite holding to ours today, the police would be justified in seizing any person on the street who might have been a witness to the speeding offense and checking their record for "warrants." Similarly, any passenger in a vehicle where the driver is committing a crime  from speeding, to reckless driving, to greater felonies  could be asked for identification in spite of Rankin's categorical prohibition, merely because he or she witnessed the driver committing the crime or had information about the driver. Again, there is no authority for such a radical departure from our jurisprudence on the protections afforded by article I, section 7 of the Washington State Constitution.
¶ 13 In conclusion, the deputy in this case had no articulable suspicion of criminal wrongdoing on Carney's part. Therefore, Deputy Kendall's seizure of Carney was unconstitutional and the trial court erroneously denied Carney's motion to suppress the drug evidence. As the drug evidence was the sole basis of Carney's conviction, we reverse and remand for the trial court to enter an order of dismissal.
¶ 14 Reversed.
PENOYAR, J.
¶ 15 I concur with the majority's result. However, I write separately to attempt to clarify an issue that many police officers must address: "When and for how long may a witness to a crime be detained to obtain evidence relating to that crime?"
¶ 16 My view is that this officer's show of authority prior to the records check  pulling behind the black car with emergency lights on and requesting identification  was a constitutional warrantless seizure. However, once the officer obtained Carney's identification, the justification for her detention ended *147 and she should not have been detained for a records check. Thus the evidence seized as a result of the records check should be suppressed.
¶ 17 Article 1, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." A warrantless seizure is considered per se unreasonable unless it falls within one of the few exceptions to the warrant requirement. State v. Ladson, 138 Wash.2d 343, 349, 979 P.2d 833 (1999). When analyzing police-citizen interactions, we must first determine whether a warrantless seizure occurred. State v. O'Neill, 148 Wash.2d 564, 574, 62 P.3d 489 (2003).
¶ 18 A seizure occurs when, considering all the circumstances, an individual's freedom of movement is restrained and the individual would not believe that she is free to leave or decline a request due to an officer's use of force or display of authority. O'Neill, 148 Wash.2d at 574, 62 P.3d 489; see State v. Rankin, 151 Wash.2d 689, 695, 92 P.3d 202 (2004). The test is purely an objective one, looking to the actions of the law enforcement officer. State v. Young, 135 Wash.2d 498, 501, 957 P.2d 681 (1998).
¶ 19 Here, Deputy Kendall pulled up behind the sedan with emergency lights flashing, approached the vehicle, commanded the women to show their hands, and then asked for their identification. Objectively, these actions restrained Carney's freedom of movement and convinced her that she was not free to leave. Thus, a warrantless seizure did occur.
¶ 20 Generally, warrantless searches and seizures are per se unreasonable. State v. Houser, 95 Wash.2d 143, 149, 622 P.2d 1218 (1980). Nonetheless, there are a few "`jealously and carefully drawn' exceptions" to the warrant requirement which "provide for those cases where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate." Houser, 95 Wash.2d at 149, 622 P.2d 1218 (quoting Arkansas v. Sanders, 442 U.S. 753, 759, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979)). The Washington Supreme Court has set out five separate circumstances which could be "exigent"  (1) hot pursuit, (2) fleeing suspect, (3) danger to arresting officer or to the public, (4) mobility of the vehicle, and (5) mobility or destruction of the evidence. State v. Counts, 99 Wash.2d 54, 60, 659 P.2d 1087 (1983) (citing United States v. Kreimes, 649 F.2d 1185, 1192 (5th Cir.1981)).
¶ 21 Here, Deputy Kendall had information from dispatch and from his own observation that the motorcycle driver was driving recklessly and endangering the public.[4] However, he did not effect a seizure of the motorcyclist, in which case all five of the exigent circumstances above would have applied. Instead, he chose to detain the two women in the vehicle, whom he believed had information regarding the identity of the reckless driver.
¶ 22 Several courts have adopted a slightly different definition of "exigent circumstances" where the officer is detaining a witness, rather than a suspect. "[A]n officer may detain a witness only when: a serious crime occurred recently; the officer reasonably believes that the witness's information will materially assist in the investigation, and the detention is necessary." City of Kodiak v. Samaniego, 83 P.3d 1077, 1083 (Alaska 2004). Clarifying the "serious crime" requirement, the Alaska Supreme Court noted with approval language from the Model Code: "the officer [must have] reasonable cause to believe that a misdemeanor or felony, involving danger or forcible injury to persons or of appropriation of or danger to property, has just been committed." City of Kodiak, 83 P.3d at 1083-84 (quoting ALI Model Code of Pre-Arraignment Procedure § 110.0(1)(b) (1975) ). If the officer has reasonable cause to believe that a witness has knowledge material to his investigation, he may take "such action [as] is reasonably necessary to obtain or verify the identification of [the witness]." City of Kodiak, 83 P.3d at *148 1084 (quoting ALI Model Code of Pre-Arraignment Procedure § 110.0(1)(b) (1975) ).
¶ 23 Here, the motorcyclist's reckless driving posed a danger of injury to persons or property in the area. Therefore, Deputy Kendall's actions were reasonable insofar as they were necessary to obtain or verify the identification of witnesses to the crime. Because the women were in an apparently mobile car, he risked losing them (and their possible evidence) if he did not make a show of force to convince them to stay where they were. In turning on his emergency lights and approaching the vehicle, he took reasonable actions in order to preserve evidence and question the witnesses.
¶ 24 However, once Deputy Kendall had the women's names and birthdates he had no further justification to hold them. His continued detention of Carney in order to run the records check constituted an unconstitutional seizure. Moreover, the connection between this illegal seizure and the consequent arrest and search was not sufficiently attenuated to clear the taint  in fact, the seizure directly and immediately resulted in Carney's arrest. See State v. Ellwood, 52 Wash. App. 70, 74-75, 757 P.2d 547 (1988); cf. State v. Rothenberger, 73 Wash.2d 596, 600-01, 440 P.2d 184 (1968). I concur in the majority's result.
QUINN-BRINTNALL, J. (dissenting).
¶ 25 Roxanne Elaine Carney appeals her conviction of one count of possession of a controlled substance on the grounds that the trial court erred in denying her motion to suppress drugs found in her sock during a search incident to her arrest. Because the arresting deputy knew that Carney had material evidence regarding the identity of the perpetrator of a crime endangering public safety and welfare, I believe the deputy had the right to detain and identify her. Accordingly, I would affirm.
¶ 26 On March 6, 2005, a man on a white and blue street bike was doing "wheelies" down the center lines and zipping up and down 10th Avenue, a residential street in Vancouver, Clark County, Washington. James Beyer called the police to report the incident and described the motorcyclist as a white male, wearing a dark helmet, white shirt, and blue jeans. As Clark County Deputy Sheriff Kyle Kendall responded to Beyer's call, he saw two people in a black car talking to a man wearing a white shirt and blue jeans. Parked nearby was a white and blue motorcycle. Kendall was in uniform and driving a marked patrol car. As he approached, the man hurriedly mounted the motorcycle and drove off. Kendall activated his emergency lights and attempted to stop him, but the motorcyclist swerved around the patrol car, drove over the curb, and fled.
¶ 27 Deputy Kendall gave dispatch identifying and directional information on the fleeing motorcyclist and then asked the two women in the car to identify themselves and the motorcyclist with whom they had been speaking. Kendall verified the identification they provided and discovered an outstanding arrest warrant for the passenger, Carney. Two small bags of methamphetamine were found on Carney during a search incident to her arrest.
¶ 28 The State charged Carney with one count of possession of a controlled substance. Following the denial of her motion to suppress, Carney was tried to the court on stipulated facts, found guilty, and sentenced to a standard range sentence of 30 days, with 3 days credit for time served and the remaining 27 days converted to community service.
¶ 29 On appeal, Carney argues that the trial court improperly denied her motion to suppress the evidence found during the search incident to her arrest because the arrest was the result of an initial unlawful seizure. I disagree.
¶ 30 A court reviews the denial of a suppression motion, to determine whether substantial evidence supports the trial court's findings of fact and whether those findings support the conclusions of law. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994); State v. Dempsey, 88 Wash.App. 918, 921, 947 P.2d 265 (1997). Whether a seizure occurred is a mixed question of law and fact. Although the trial court's factual findings are entitled to deference, whether those facts constitute a seizure is a question of law that we review de novo. State v. Thorn, 129 *149 Wash.2d 347, 351, 917 P.2d 108 (1996), overruled on other grounds by State v. O'Neill, 148 Wash.2d 564, 62 P.3d 489 (2003).
¶ 31 I agree with Carney that Deputy Kendall seized her. But I disagree that the seizure was unlawful. Under article I, section 7 of the Washington State Constitution, a person is seized "when restrained by means of physical force or a show of authority," her freedom of movement is restrained, and a reasonable person would not have believed she is (1) free to leave, under all the circumstances,[5] or (2) free to otherwise decline an officer's request and terminate the encounter. Thorn, 129 Wash.2d at 352, 917 P.2d 108. This seizure standard is a "purely objective one, looking to the actions of the law enforcement officer." State v. Young, 135 Wash.2d 498, 501, 957 P.2d 681 (1998). Carney has the burden of proving that a seizure occurred in violation of article I, section 7 of Washington's Constitution. Young, 135 Wash.2d at 509, 957 P.2d 681; Thorn, 129 Wash.2d at 354, 917 P.2d 108.
¶ 32 In this case, Deputy Kendall prohibited the black car in which Carney was a passenger from leaving. He asked for and received identification from the driver and Carney and ran a records check on them both while he questioned them about the motorcyclist's identity.
¶ 33 The Model Code of Pre-Arraignment Procedure (§§ 110.2(1)(b) and 9-10 (1975) ) suggests detention of witnesses is permissible when:
(i) The officer has reasonable cause to believe that a misdemeanor or felony, involving danger of forcible injury to persons or of appropriation of or danger to property, has just been committed near the place where he finds such person, and
(ii) the officer has reasonable cause to believe that such person has knowledge of material aid in the investigation of such crime, and
(iii) such action is reasonably necessary to obtain or verify the identification of such person, or to obtain an account of such crime.
4 Wayne R. LaFave, Search and Seizure § 9.2(b) (4th ed.2004).
¶ 34 Here, Deputy Kendall detained Carney and the driver of the black car as part of his investigation of reckless driving (RCW 46.61.500) and the felony of attempting to elude a police officer (RCW 46.61.024). Kendall initially responded to a report of a motorcyclist driving recklessly in a residential area. He saw a person matching the suspect's description talking with Carney and another woman. Thus, Kendall had probable cause to believe the women had information regarding the motorcyclist's identity. When the motorcyclist tried to avoid apprehension by driving onto the sidewalk and speeding off, he committed the felony of attempting to elude a pursuing police officer in the women's presence. Rather than engaging in a dangerous chase of the fleeing motorcyclist through residential streets, Kendall decided to gather evidence that could later be used to apprehend and charge him.
¶ 35 The women were clearly eye witnesses with material evidence of the identity of the person who committed a crime endangering the lives and property of others. In my opinion, Deputy Kendall had a duty to question those witnesses and obtain and verify the identity of the motorcyclist if possible. See City of Kodiak v. Samaniego, 83 P.3d 1077, 1084 (Alaska 2004) (officer may take such action as reasonably necessary to obtain or verify the identification of the witness). If they knew the motorcyclist, or could only describe him, they had material evidence of his identity and could later testify whether the man who was driving the motorcycle that night was the registered owner of the motorcycle or not. Arguably, due process required that Kendall take and preserve this identification evidence.[6]State v. Gilcrist, 91 *150 Wash.2d 603, 609, 590 P.2d 809 (1979); State v. Gerber, 28 Wash.App. 214, 218, 622 P.2d 888 (failure to preserve purely corroborating witness's identity not constitutionally material), review denied, 95 Wash.2d 1021, 1981 WL 191038 (1981). Thus, Kendall properly obtained identification of two eye witnesses to a crime, learned of an outstanding arrest warrant, and lawfully arrested Carney on the warrant.
¶ 36 Once Deputy Kendall found there was an outstanding warrant for Carney's arrest, he was entitled to arrest her and search her pursuant to the valid arrest warrant. See, e.g., People v. Murray, 312 Ill.App.3d 685, 691-92, 245 Ill.Dec. 430, 728 N.E.2d 512 (2000):
It would be illogical and nonsensical for us to hold that once the police illegally stop an automobile, they can never arrest an occupant who is found to be wanted on a warrant. Even in situations where the exclusionary rule is plainly applicable, the Supreme Court has declined to adopt a "per se" or "but for" rule that would make inadmissible any evidence, whether tangible or live-witness testimony, which somehow came to light through a chain of causation that began with an illegal arrest.
See State v. Jones, 27 Kan.App.2d 476, 5 P.3d 1012 (2000), aff'd, 270 Kan. 526, 17 P.3d 359 (2001) (Once the officer learned of the outstanding warrant, he had a right and duty to arrest the appellant, regardless of whether appellant had been lawfully or unlawfully detained at that point in time. Once the officer had the right to lawfully arrest the appellant, the officer had a right to search him incident to the arrest.).
¶ 37 Washington courts, as well as several other courts in the country, have held that outstanding arrest warrants supply probable cause to arrest and, thus, provide an intervening circumstance under Brown,[7] which dissipates the taint of an initial illegal encounter. United States v. Green, 111 F.3d 515 (7th Cir.), cert. denied, 522 U.S. 973, 118 S.Ct. 427, 139 L.Ed.2d 328 (1997); People v. Hillyard, 197 Colo. 83, 589 P.2d 939 (Colo. 1979); State v. Hill, 97-2551 (La.11/6/98); 725 So.2d 1282; State v. Thompson, 231 Neb. 771, 438 N.W.2d 131 (Neb.1989); Reed v. State, 809 S.W.2d 940 (Tex.App.1991); State v. Rothenberger, 73 Wash.2d 596, 440 P.2d 184 (1968).
¶ 38 Carney does not and could not reasonably challenge the search incident to her arrest on the warrant. A search incident to arrest, under article I, section 7 of the Washington State Constitution, is a recognized exception to the general warrant requirement. State v. Potter, 156 Wash.2d 835, 840, 132 P.3d 1089 (2006). "The valid arrest provides the `authority of law' to search." Potter, 156 Wash.2d at 840, 132 P.3d 1089.
¶ 39 Accordingly, the trial court properly declined to suppress evidence found during the lawful search incident to Carney's arrest and I would affirm.
NOTES
[1] The warrant was for failure to transfer title within 45 days.
[2] Relying on State v. Rankin, 151 Wash.2d 689, 92 P.3d 202 (2004), the State concedes that a seizure occurred in this case. Under Rankin, freedom from disturbance in "private affairs" afforded to car passengers by article I, section 7 of the Washington State Constitution prohibits officers from requesting identification from passengers for investigative purpose unless an independent reason justifies the request. Rankin, 151 Wash.2d at 699, 92 P.3d 202. Rankin, however, does not reach occupants in cars parked in public spaces. See Rankin, 151 Wash.2d at 697, 92 P.3d 202 (distinguishing between pedestrians and passengers for article I, section 7 purposes); O'Neill, 148 Wash.2d at 579, 62 P.3d 489 (concluding that where a vehicle is parked in a public space, the distinction between a pedestrian and the occupant of a vehicle dissipates); State v. Mote, 129 Wash.App. 276, 120 P.3d 596 (2005) (pointing out that Rankin addresses passengers in vehicles stopped by law enforcement after a show of authority, whereas O'Neill addresses persons seated in vehicles parked in public places.)
[3] Under RCW 10.31.100:

A police officer having probable cause to believe that a person has committed or is committing a felony shall have the authority to arrest the person without a warrant. A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer.
(Emphasis added).
[4] While it was likely that Carney had information regarding the identity of a driver violating RCW 46.61.500 (reckless driving), I am not sure that there was evidence of all of the elements of RCW 46.61.024 (attempting to elude a police vehicle), as the dissent contends.
[5] State v. Young, 135 Wash.2d 498, 510, 957 P.2d 681 (1998) (quoting State v. Stroud, 30 Wash. App. 392, 394-95, 634 P.2d 316 (1981), review denied, 96 Wash.2d 1025 (1982)).
[6] I note that if the crime in question were a violent offense, the women would have a duty to report:

(1) A person who witnesses the actual commission of:
(a) A violent offense as defined in RCW 9.94A.030 or preparations for the commission of such an offense;
(b) A sexual offense against a child or an attempt to commit such a sexual offense; or
(c) An assault of a child that appears reasonably likely to cause substantial bodily harm to the child, shall as soon as reasonably possible notify the prosecuting attorney, law enforcement, medical assistance, or other public officials.
(2) This section shall not be construed to affect privileged relationships as provided by law.
(3) The duty to notify a person or agency under this section is met if a person notifies or attempts to provide such notice by telephone or any other means as soon as reasonably possible.
(4) Failure to report as required by subsection (1) of this section is a gross misdemeanor. However, a person is not required to report under this section where that person has a reasonable belief that making such a report would place that person or another family or household member in danger of immediate physical harm.
RCW 9.69.100.
[7] Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).