## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51488-5-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| RAFAEL MARTINEZ-LEDESMA, | |
| Appellant. | |

MAXA, C.J. – Rafael Martinez-Ledesma appeals his conviction of possession of a controlled substance – cocaine and the imposition of certain legal financial obligations (LFOs). The cocaine was discovered after an officer conducted an investigative stop of Martinez-Ledesma's truck based on a report that Martinez-Ledesma had been involved in a physical dispute where property was damaged.

We hold that (1) the trial court did not err in denying Martinez-Ledesma's motion to suppress the cocaine because the officer had a reasonable suspicion that Martinez-Ledesma had been involved in criminal activity; (2) as the State concedes, the trial court erred in imposing jury costs as a sanction for failing to timely waive a jury trial; and (3) as the State concedes, the trial court erred in imposing a discretionary LFO – a crime lab fee – without conducting an adequate individualized inquiry into Martinez-Ledesma's ability to pay.

Accordingly, we affirm Martinez-Ledesma's conviction, but we remand for the trial court to strike the jury costs and to conduct an inquiry into Martinez-Ledesma's ability to pay the crime lab fee.

FACTS

In December 2016, Deputy Tyson Brown and Deputy Skylar Eastman of the Lewis County Sheriff's Office responded separately to a call regarding an incident taking place. Dispatch advised that there was a physical dispute, property was being damaged, and the people involved had been drinking alcohol. While driving to the property, Brown passed a green truck heading in the opposite direction.

After arriving at the property, Brown immediately asked the complainant if the pickup truck he had just passed was involved in the dispute. The complainant said that the truck was involved. Brown requested that Eastman, who still was on his way to the property, stop the truck based on its reported involvement in the incident. Brown continued to question the complainant about the dispute and eventually determined that no crime had taken place.

Eastman stopped the truck and identified the driver as Martinez-Ledesma. Eastman smelled a strong odor of intoxicants coming from the vehicle and observed that Martinez-Ledesma's eyes appeared to be bloodshot and watery. Eastman performed a horizontal gaze nystagmus test, which indicated intoxication. Eastman placed Martinez-Ledesma under arrest for driving under the influence of alcohol.

Eastman conducted a search of Martinez-Ledesma incident to arrest and found two bags containing a white powdery substance. Eastman conducted a field test on the powder, which indicated a presumptive positive for cocaine. The State charged Martinez-Ledesma with possession of a controlled substance – cocaine.

Martinez-Ledesma filed a motion to suppress any evidence arising from the stop of his truck. The trial court held a CrR 3.6 hearing on the suppression motion. Brown and Eastman both testified to the facts surrounding the stop and search of Martinez-Ledesma.

The trial court denied the suppression motion. The court entered written findings of fact consistent with the facts stated above. The court concluded that Brown and Eastman had a reasonable suspicion that the occupants of the truck were involved in criminal activity based on the information relayed to dispatch by the complainant. The court also concluded that once Eastman made the stop, he developed an independent basis for detaining Martinez-Ledesma based on his observations of Martinez-Ledesma driving a vehicle and showing signs of having consumed alcohol.

The day before trial, Martinez-Ledesma's defense counsel sent an email to the prosecutor waiving his right to a jury trial. However, the trial court stated at the start of trial that Martinez-Ledesma had not properly submitted a written waiver and therefore was liable for the cost of impaneling a jury. The court stated that Martinez-Ledesma could either go to trial with a jury or accept the costs of impaneling the jury. Martinez-Ledesma chose to proceed to a bench trial and incur the costs of impaneling the jury.

The trial court found Martinez-Ledesma guilty. At sentencing, the court briefly inquired into Martinez-Ledesma's ability to pay LFOs. The court asked Martinez-Ledesma if he was working, how much money he earned each month, how many people he was supporting on his wages, and whether he received government assistance. The court also asked if Martinez-Ledesma had retained his own defense counsel. The court found that Martinez-Ledesma had the ability to pay and imposed LFOs, including a $100 crime lab fee and $1,534.28 in jury costs.

Martinez-Ledesma appeals his conviction and the imposition of certain LFOs.

ANALYSIS

A.    VALIDITY OF INVESTIGATIVE STOP

Martinez-Ledesma argues that the trial court erred by denying his suppression motion, claiming that the officers did not have a reasonable suspicion to conduct an investigative stop. We disagree.

1.    Legal Principles

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, a law enforcement officer generally cannot seize a person without a warrant. *State v. Fuentes*, 183 Wn.2d 149, 157-58, 352 P.3d 152 (2015). If a seizure occurs without a warrant, the State has the burden of showing that it falls within one of the carefully drawn exceptions to the warrant requirement. *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796 (2015). One established exception is a brief investigative detention of a person, known as a *Terry*[1] stop. *Id.*

For an investigative stop to be permissible, a police officer must have had a reasonable suspicion based on specific and articulable facts that the detained person was or was about to be involved in a crime. *Id.* A "generalized suspicion that the person detained is 'up to no good' " is not enough; "the facts must connect the particular person to the particular crime that the officer seeks to investigate." *Id.* at 618 (italics omitted). If an officer did not have a reasonable suspicion of criminal activity, a detention is unlawful and evidence discovered during the detention must be suppressed. *Fuentes*, 183 Wn.2d at 158.

We determine the propriety of an investigative stop – the reasonableness of the officer's suspicion – based on the "totality of the circumstances." *Id.* "The totality of circumstances

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

includes the officer's training and experience, the location of the stop, the conduct of the person detained, the purpose of the stop, and the amount of physical intrusion on the suspect's liberty." *Id.* The focus is on what the officer knew at the inception of the stop. *Id.*

Under the "fellow officer" rule, an individual officer may rely upon information from another officer in forming a reasonable suspicion or initiating an investigative stop. *State v. Butler*, 2 Wn. App. 2d 549, 570, 411 P.3d 393 (2018). An officer has a reasonable suspicion if he acts upon the direction of another officer and law enforcement as a whole have sufficient information to justify an investigative stop. *Id.*

Where an officer's reasonable suspicion is based on an informant's tip, the State must show that the tip had some indicia of reliability. *Z.U.E.*, 183 Wn.2d at 618. "We require that there be either (1) circumstances establishing the informant's reliability or (2) some corroborative observation, usually by the officers, that shows either (a) the presence of criminal activity or (b) that the informer's information was obtained in a reliable fashion." *Id.*

In evaluating a denial of a motion to suppress evidence, we review the trial court's findings of fact for substantial evidence and review de novo the trial court's conclusions of law based on those findings. *Fuentes*, 183 Wn.2d at 157. Evidence is substantial if it is enough to persuade a fair-minded person of the truth of the stated premise. *State v. Froehlich*, 197 Wn. App. 831, 837, 391 P.3d 559 (2017). Unchallenged findings are treated as verities on appeal. *State v. Betancourth*, 190 Wn.2d 357, 363, 413 P.3d 566 (2018).

2. Analysis

Here, the trial court found that dispatch told Brown and Eastman that "there was a group of people at the location of the call refusing to leave, there was a physical dispute, property was being damaged, and the people involved had been drinking alcohol." Clerk's Papers (CP) at 106.

The court also found that when he arrived at the property, Brown "asked if the green truck was involved in the incident, which the complainant indicated it was." CP at 107. Finally, the court found that Brown requested that Eastman stop the truck "based on the reported involvement in the incident." CP at 107.[2] Because Martinez-Ledesma does not challenge these findings they are verities on appeal. *Betancourth*, 190 Wn.2d at 363.

These unchallenged findings support the trial court's conclusion that Eastman had a reasonable suspicion that the occupant of the truck had been involved in criminal activity. Eastman had been told that there was a physical altercation including property damage and that the truck had been involved. The description of the incident was sufficient for Eastman to suspect that the truck's occupant had engaged in an assault in violation of RCW 9A.36.041 and malicious mischief in violation of RCW 9A.48.070, .080, or .090.

Martinez-Ledesma asserts that the investigative stop was invalid for several reasons. First, he argues that the deputies had reason to suspect only that he was a witness to the incident and not a participant. Martinez-Ledesma claims that this case is similar to *State v. Carney*, 142 Wn. App. 197, 174 P.3d 142 (2007). In that case, an officer observed a reckless driving suspect on a motorcycle talking to the occupants of a parked vehicle. *Id.* at 200. After the motorcycle evaded the officer and raced off, the officer detained the vehicle's occupants. *Id.* This court held that the officer's belief that the vehicle's occupants had information about the identity of the suspect or the reckless driving did not justify the detention. *Id.* at 203. The court stated that there was no authority allowing the detention of a possible witness to a crime. *Id.*

---

[2] The trial court also found that, in addition to Brown requesting Eastman to stop the truck, Eastman observed that the truck "had a white light emitting from the back, which is a moving violation he has stopped vehicles for in the past." CP at 107. However, the court did not base its conclusion that the stop was valid on this finding.

6

But the facts here are different. In *Carney*, the officer was investigating a complaint about a motorcycle driving recklessly, and the officer had no basis for believing the vehicle's occupants were involved in the potential crime he was investigating – a motorcyclist's reckless driving. *Id.* at 200, 203. Here, Eastman had information that the truck's occupant was involved in the potential crime he was investigating.

Second, Martinez-Ledesma argues that Brown and Eastman had no indication that the complainant's tip was reliable and that they made no corroborative observations that would support reliability. Martinez-Ledesma did not make this argument in his suppression motion, and therefore the trial court did not make any specific finds regarding reliability of the complainant. However, the record shows that the complainant was a named informant who was an eyewitness to the incident. Information based on witnessing a crime as it occurs is "obtained in a reliable fashion." *Z.U.E.*, 183 Wn.2d at 618.

Third, Martinez-Ledesma argues that even if Eastman had a reasonable suspicion to stop the truck, he unlawfully extended the scope of the investigation. He claims that once Brown determined that no crime had taken place, Eastman no longer had a reasonable suspicion to investigate the truck. Martinez-Ledesma cites *Butler*, 2 Wn. App. 2d at 571-72, for the proposition that under the fellow officer rule, new information for one officer can eliminate another officer's reasonable suspicion for an investigative stop.

A lawful investigative stop is limited to fulfilling the investigative purpose of the stop. *State v. Alexander*, 5 Wn. App. 2d 154, 160, 425 P.3d 920 (2018), *review denied* 192 Wn.2d 1026 (2019). But if the investigation affirms or increases the officer's suspicions, the officer may extend the scope of the stop. *Id.* Here, the trial court made no finding that Brown determined that no crime had occurred *before* Eastman stopped the truck. Once Eastman

7

stopped the truck and observed Martinez-Ledesma, he noticed immediately that the truck smelled of alcohol and that Martinez-Ledesma's eyes were bloodshot and watery. Therefore, Eastman could lawfully extend the scope of the investigative stop even if Brown determined that no crime occurred at some time after the stop occurred.

We hold that Eastman's investigative stop of Martinez-Ledesma's truck was valid. Accordingly, we hold that the trial court did not err in denying Martinez-Ledesma's suppression motion.

B.      IMPOSITION OF JURY COSTS

Martinez-Ledesma argues, and the State concedes, that the trial court erred by imposing jury costs of $1,534.28. We agree.

Under former RCW 10.46.190 (2005), a person convicted of a crime is liable for a jury fee "when tried by a jury." Former RCW 36.18.016(3)(b) (2016) states that this fee shall be $125 for a jury of six and $250 for a jury of twelve. However, as Martinez-Ledesma points out, RCW 10.46.190 is inapplicable because he was not "tried by a jury" as required in that statute.

In fact, it does not appear that the trial court imposed a jury fee under RCW 10.46.190. On the judgment and sentence, the line for "[j]ury demand fee" is blank. CP at 75. Instead, the court imposed "jury costs" on the line for "other" LFOs. CP at 75. The State notes that the court imposed these jury costs as a sanction for not notifying the court in a timely fashion that a jury panel would not be required. The State concedes that a sanction was not appropriate here because Martinez-Ledesma's attorney was not present at the trial confirmation hearing, and therefore he did not have the opportunity to waive a jury until the day of trial.

We accept the State's concession. There is no basis in the record for imposing jury costs as a sanction against Martinez-Ledesma. Therefore, the trial court must strike the $1,534.28 in jury costs.

C.      IMPOSITION OF DISCRETIONARY LFOS

Martinez-Ledesma argues, and the State concedes, that the trial court erred by failing to adequately inquire into Martinez-Ledesma's ability to pay discretionary LFOs. We agree.

Under former RCW 10.01.160(3) (2015), a trial court could not impose costs unless the defendant was or would be able to pay them. In *State v. Blazina*, the Supreme Court held that a trial court must make "an individualized inquiry into the defendant's current and future ability to pay" before imposing discretionary LFOs. 182 Wn.2d 827, 838, 344 P.3d 680 (2015). In *State v. Ramirez*, the court emphasized that employment history, income, assets and other financial resources, monthly living expenses, and other debts are relevant to determining a defendant's ability to pay discretionary LFOs. 191 Wn.2d 732, 744, 426 P.3d 714 (2018). The court stated that "the record must reflect that the trial court inquired into all five of these categories before deciding to impose discretionary costs." *Id.*

Here, the trial court asked Martinez-Ledesma if he was working, how much money he made each month, how many people in his extended family he was supporting on his wages, whether he was receiving any kind of government assistance, and whether he had retained a private attorney. However, the court did not inquire into the amount of the support Martinez-Ledesma was providing to his extended family, the amount of his wife's income or other sources of income, or the family's other debts or assets.

Under *Blazina* and *Ramirez*, the trial court failed to conduct an adequate inquiry into Martinez-Ledesma's ability to pay discretionary LFOs. The only discretionary LFO the court

imposed was the $100 crime lab fee.  Therefore, we remand for the trial court to conduct an inquiry into Martinez-Ledesma's ability to pay that fee.

CONCLUSION

We affirm Martinez-Ledesma's conviction, but we remand for the trial court to strike the jury costs and to conduct an inquiry into Martinez-Ledesma's ability to pay the crime lab fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

LEE, J.

CRUSER, J.